## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD ANDERSON, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:21-cv-334 |
| UNITED STATES OF AMERICA; | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| VETERANS AFFAIRS; DEPARTMENT | ) | |
| OF VETERANS AFFAIRS; VETERANS | ) | |
| HEALTH ADMINISTRATION; and | ) | |
| ERIE VETERANS ADMINISTRATION | ) | |
| MEDICAL CENTER, | ) | |
| Defendants | ) | JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW, comes Plaintiff, Gerald Anderson, by and through his counsel, Purchase George & Murphey, P.C., and files this complaint against Defendants United States of America; United States Department of Veterans Affairs; Department of Veterans Affairs; Veterans Health Administration; and Erie Veterans Affairs Medical Center:

### PARTIES

1.      Plaintiff Gerald Anderson ("Mr. Anderson") is an adult citizen of the Commonwealth of Pennsylvania and a United States military veteran, residing and domiciled at 1158 East 10th Street, Erie, Pennsylvania 16503.

2.      Defendant Erie Veterans Administration Medical Center ("Erie VA") is a federally operated and funded medical treatment facility located at 135 East 38th Street, Erie, Pennsylvania 16504, responsible for serving United States Military veterans, including Gerald Anderson.

3.      Defendants United States Department of Veterans Affairs, Department of Veterans Affairs, and/or Veterans Health Administration are cabinet-level executive branch departments of the United States federal government charged with providing healthcare services to military

1

veterans, including Gerald Anderson, through veterans medical centers, including the Erie (Pennsylvania) Veterans Administration Medical Center.

4.      Defendant United States of America is subject to suit for personal injury caused by the negligent and wrongful acts and omissions of employees of the federal government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff, pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671 *et seq*.

## JURISDICTION AND VENUE

5.      This action arises under the Federal Tort Claims Act, 28 U.S.C. §1346(b)(1), §7316(a)(1), §7316(a)(2), §2671, *et seq*., and §1151(a), *inter alia*.

6.      This Court has original jurisdiction over the proceedings against all Defendants because Plaintiff suffered injuries and damages as a result of the medical negligence of the medical providers and staff of the Erie VA, while said medical providers and staff were employees, agents or ostensible agents of some or all of the Defendants and were acting within the course and scope of their employment or agency. The claims herein are for money damages as compensation for the personal injuries and pecuniary losses caused by the negligent and wrongful acts and omissions of employees of the United States and/or other Defendants, while acting within the scope of their offices and employment, under circumstances where the Defendants, if private persons, would be liable to the Plaintiff in accordance with the laws of the Commonwealth of Pennsylvania.

7.      Under the laws of the Commonwealth of Pennsylvania, the Defendants, jointly and severally, including the Erie VA Medical Center and its medical providers and staff, owed a duty to provide prompt and appropriate medical care to Mr. Anderson; the care provided to him

breached the standard of care; the breaches are the proximate cause of Mr. Anderson's harm; and Mr. Anderson suffered damages as a result of the Defendants' breach.

8.      Venue is appropriate in this District pursuant to 28 U.S.C. §1391 (b) in that, at all times relevant hereto, the Plaintiff was a resident of Erie County, Pennsylvania and the defendant medical facility was located in Erie County, Pennsylvania. Furthermore, the events and/or omissions giving rise to this claim occurred in Erie County, Pennsylvania, which is within this judicial district.

9.      Plaintiff presented his claim via Registered Mail, Return Receipt Requested and regular first-class United States Mail, to Defendants pursuant to 28 U.S.C. §2675. Said claim contained a demand for money damages, and such demand was a sum certain in excess of the required jurisdictional amount. The claim was received by Defendants on June 1, 2021, as acknowledged by letter dated June 17, 2021 from the U.S. Department of Veterans Affairs, Office of General Counsel. Six months later, Defendants have not responded to plaintiff's claim.

10.      Plaintiff has complied with all administrative requirements to assert this action, and all administrative remedies have been exhausted. In compliance with 28 U.S.C. Section 2401(b) Plaintiff brings his cause of action within six months of the appropriate Federal agency's failure to deny or settle Plaintiff's claim for $3,000,000.

**FACTS**

11.      Mr. Anderson established primary care at the Erie VA on or about December 16, 2016, during an initial medical visit and physical examination.

12.      At that first medical visit, Mr. Anderson told the nurse practitioner that his parents had a history of cancer, and he was concerned about his risk of prostate cancer because his brother had recently died from complications of prostate cancer.

3

13.     At that first medical visit, Mr. Anderson informed the nurse practitioner that his last physical exam was seven (7) to eight (8) years prior to that visit.

14.     At that first medical visit, Mr. Anderson was asked his "level of interest in learning about illness and/or health promotion." Mr. Anderson's response was "great interest".

15.     Despite Mr. Anderson's concerns pertaining to his family history of cancer and his brother's death of prostate cancer, Mr. Anderson was not advised about the benefits and risks of prostate screening, nor was he given any other information regarding prostate cancer screening or the possibility of prostate cancer screening at his December 2016 medical visit at the Erie VA.

16.     No genitourinary exam or PSA testing were performed at the December 2016 medical visit.

17.     Almost a year later, on August 29, 2017, Mr. Anderson returned for another physical examination at which time there was again no documentation showing that Mr. Anderson was advised about the possibility of prostate cancer screening.

18.     On June 29, 2018, Mr. Anderson returned again to the primary care clinic at the Erie VA. He expressed concern for potential prostate abnormalities. He mentioned he was getting up from sleep to urinate two to three times a night and did not feel that his bladder was emptying.

19.     The June 29, 2018 medical records fail to record these symptoms under "review of systems".

20.     No prostate exam was conducted.

21.     A serum prostate specific antigen (PSA) test was ordered and conducted. A bladder ultrasound was ordered and conducted. An alpha-blocking medication was discussed to potentially relieve the urinary symptoms.

4

22.     A urology consultation was to be considered pending the results of the PSA test and bladder ultrasound.

23.     On July 2, 2018, Mr. Anderson's PSA test came back highly elevated and grossly abnormal at 46.986 ng/mL. (A normal PSA range is less than or equal to 4 ng/mL.)

24.     Mr. Anderson was not notified regarding his severely elevated PSA level as revealed by the July 2, 2018 PSA test result.

25.     There is no documentation in the medical records indicating that Mr. Anderson's doctors, physician's assistant, nurse, nurse practitioner, or any of his medical care providers or staff at the Erie VA ever reviewed Mr. Anderson's highly elevated PSA test result of July 2, 2018.

26.     There is no documentation that Mr. Anderson's doctors, physician's assistant, nurse, nurse practitioner, or any of his medical care providers or staff at the Erie VA ever inquired into the results of Mr. Anderson's 2018 PSA test results.

27.     The bladder ultrasound was performed on July 26, 2018 and revealed a mildly enlarged prostate gland (volume 41 mL) and a moderate post-void residual in the bladder at 38 mL indicating that the bladder was not completely emptying.

28.     Together, the 2018 PSA result, enlarged prostate gland, and bladder test results were very concerning for prostate malignancy and should have prompted an urgent referral to a urologist for additional evaluation and work-up.

29.     Despite these red flags, no further treatment or testing was ordered or performed to diagnose Mr. Anderson's prostate cancer until almost one year later.

30.     On June 28, 2019, Mr. Anderson returned to the Erie VA primary clinic with complaints of numbness and tingling in his feet, as well as continuing dysuria.

31.     Once again, Mr. Anderson's symptom of dysuria is not documented in the "systems" section of his medical records, although it is documented in another section of the medical record.

32.     No prostate exam was performed at this visit.

33.     Another PSA test was ordered and performed on June 28, 2019.

34.     The June 28, 2019 PSA test returned an abnormal and highly elevated result at 65.037 ng/mL.

35.     A VA nurse practitioner sent Mr. Anderson a letter informing him of his 2019 PSA test result and that his PSA level was elevated. The letter also instructed Mr. Anderson to be sure to attend a urology consultation.

36.     On July 12, 2019, Mr. Anderson's urologist recommended a biopsy which was then performed on August 2, 2019.

37.     The biopsy revealed that Mr. Anderson had advanced (Stage IV) prostate adenocarcinoma.

38.     On August 9, 2019, a bone scan and other tests revealed bony metastatic lesions in the T6 vertebra and in the pelvis.

39.     A CT scan of the abdomen/pelvis with and without contrast showed the presence of multiple sclerotic lesions at multiple levels of the spine. Shotty and enlarged lymph nodes were also noted.

40.     Mr. Anderson was referred to oncology and hematology where he received chemotherapy and androgen deprivation therapy to treat his metastatic prostate adenocarcinoma.

41.     Despite ongoing treatment, Mr. Anderson's prognosis is poor.

42.     Defendants' significant delay in diagnosing or treating Mr. Anderson's prostate cancer has resulted in a poorer prognosis for recovery than had he been diagnosed and treated earlier and has increased his risk of early mortality. Moreover, Mr. Anderson has had to undergo longer, more aggressive, and more painful and debilitating treatment in an attempt to cure his prostate cancer, than had he been diagnosed earlier.

43.     As a direct and proximal result of the negligence of the Defendants and/or Defendants' agents, apparent agents, ostensible agents, servants, representatives, and/or employees, Mr. Anderson now must suffer significantly more aggressive, painful, and debilitating treatment for a longer period of time and he suffers from a significantly poorer prognosis than had he received a timely diagnosis of prostate cancer.

44.     The care and treatment provided to Gerald Anderson by the Erie VA and/or its employees, agents and/or ostensible agents was negligent and deviated from the standard of care in the following respects:

> a.  Failing to timely diagnose and/or effectively treat Mr. Anderson's prostate cancer;
>
> b.  Failing to appropriately respond and/or failing to respond in a timely manner to Mr. Anderson's articulated concerns about his family history of mortality as a result of cancer and prostate cancer, and about his own potential for developing prostate cancer;
>
> c.  Failing to advise (including the advising of risks and benefits), suggest, offer or otherwise discuss prostate cancer screening at Mr. Anderson's December 16, 2016 initial encounter at the Erie VA, in light of Mr. Anderson's family history and specific concerns about prostate cancer;

    d.   Failing to advise (including the advising of risks and benefits), suggest, offer or otherwise discuss prostate cancer screening at any time between Mr. Anderson's December 16, 2016 initial encounter at the Erie VA and the time of his first PSA test ordered on or about June 29, 2018, in light of Mr. Anderson's family history and specific concerns about prostate cancer, and his emerging symptoms of prostate cancer;

    e.   Failing to accurately document Mr. Anderson's reported symptoms in his medical records;

    f.   Failing to provide an appropriate or timely medical response to Mr. Anderson's symptoms, and/or test results indicative of potential prostate cancer;

    g.   Failure of the VA laboratory to convey the 2018 PSA test results to the VA doctors or health care providers;

    h.   Failure of the VA doctors or other treatment providers to seek the results of Mr. Anderson's July 2, 2018 PSA test results from the laboratory;

    i.   Failing to review Mr. Anderson's markedly elevated July 2, 2018 PSA test results;

    j.   Failing to convey Mr. Anderson's markedly elevated July 2, 2018 PSA test results to Mr. Anderson;

    k.   Failure to urgently refer Mr. Anderson to a urologist for further evaluation and work-up after the July 2, 2018 PSA test results revealed a markedly elevated PSA, and/or after the July bladder ultrasound revealed an enlarged prostate and insufficiently emptying bladder; and

l.   Failure to ensure that ordered bloodwork testing was completed by Mr. Anderson and the results reviewed in a timely and appropriate manner by Mr. Anderson's medical care providers.

45.   As the result of Defendants' failure to promptly diagnose and properly treat Mr. Anderson's prostate cancer he has suffered the following injuries, including, but not limited to:

a.   an increased risk of early mortality as a result of prostate cancer or complications from prostate cancer;

b.   Having to undergo more aggressive, painful, debilitating, and longer treatment in an attempt to cure his prostate cancer; and

c.   Increased anxiety and depression about his prognosis for recovery.

46.   Mr. Anderson's damages include, but are not limited to:

a.   Increased medical expenses;

b.   Increased pain and suffering;

c.   Increased embarrassment and humiliation; and

d.   Increased loss of ability to enjoy the pleasures of life.

47.   Mr. Anderson's injuries continue to cause him loss and harm and he expects all those damages listed above to continue.

48.   Defendants' negligence was the direct and proximate cause of Mr. Anderson's injuries resulting in damages.

## COUNT I – NEGLIGENCE

49.   Plaintiff incorporates the averments of this complaint as if set forth more fully herein.

### A.   Corporate Negligence/Negligent Supervision

50.     The injuries, pain and suffering, damages and losses sustained by Mr. Anderson, as set forth above and for which he seeks recovery, were the direct and proximate result of the negligence, gross negligence, carelessness and malpractice of the Erie VA as set forth herein and in any or all of the following respects:

a.  Failing and neglecting in its duty to train, supervise and/or oversee all persons who practice nursing and/or medicine and other agents, servants and/or employees, so as to properly and promptly advise, inform, evaluate, diagnose, or treat patients in need of treatment for potential prostate cancer or prostate cancer;

b.  Failing to have in place proper rules, procedures, protocols, training and standards or if enacted and promulgated, failing to enforce or perform pursuant to sufficient rules regarding the proper and prompt advice, evaluation, and treatment of patients presenting with a family history of prostate cancer, concerns about prostate cancer, urologic symptoms such as dysuria or an enlarged prostate gland, suggestive of prostate cancer or other disease;

c.  Failing to have in place proper rules, procedures, protocols, training and standards or if enacted and promulgated, failing to enforce or perform pursuant to sufficient rules requiring laboratory personnel to convey test results to medical providers, requiring medical providers to seek laboratory results from tests ordered, requiring medical providers to convey laboratory results to patients, requiring medical providers to promptly and properly

follow up abnormal test results with appropriate and timely evaluation and treatment;

d.  Failing to have in place proper rules, procedures, protocols, training and standards or if enacted and promulgated, failing to enforce or perform pursuant to sufficient rules regarding advising patients of the risks and benefits of PSA testing, prostate examination, or other prostate screening tools available to patients presenting with a family history of prostate cancer, concerns about prostate cancer, urologic symptoms such as dysuria or an enlarged prostate gland;

e.  Failing to have in place proper rules, procedures, protocols, training and standards or if enacted and promulgated, in failing to enforce or perform pursuant to such rules to ensure effective communication between departments and their personnel, including communication between the laboratory and the primary care physicians and other primary care treatment providers, to ensure coordination and/or continuity of care and specific to this case, to ensure follow-up testing to rule out prostate cancer;

f.  Failing in its duty to select, employ, hire and retain only competent physicians, surgeons, nurses, nurse practitioners, laboratory personnel and/or other agents, servants, and/or employees with adequate experience, qualifications, skills, education, and knowledge to advise, evaluate and treat patients with symptoms of prostate cancer; and

g.  Failing in its duty to provide adequate patient care, including but not limited to diagnosis, evaluation, testing and treatment of Gerald Anderson.

11

## B.      Vicarious Negligence

51.      All of the doctors, nurses, nurse practitioners, and other medical providers and/or staff of the Erie VA who were involved in the negligent care, treatment, evaluation and/or diagnosis of Mr. Anderson, were, at all times relevant, employees, agents, representatives, apparent agents, and/or ostensible agents of the Erie VA and/or all other named Defendants and were acting in the course and scope of their duties as such and, consequently, Defendants are vicariously liable for the harm caused Mr. Anderson as a result of their negligence.

WHEREFORE, Plaintiff, Gerald Anderson, requests judgment against Defendants in an amount in excess of the limits of arbitration, plus interest, costs and whatever further relief this Court deems proper or that justice requires.


**JURY TRIAL DEMANDED**


Respectfully submitted,

Purchase, George & Murphey, P.C.


By:   */s/ Eric J. Purchase*
Eric J. Purchase
Attorney I.D. 63517
2525 West 26th Street, Suite 200
Erie, PA  16506
(814) 833-7100
eric@purchasegeorge.com

Attorney for Plaintiff